IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 28, 2018

**JAMES DELLINGER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Blount County**
**No. C-24583        David Reed Duggan, Judge**

_____

**No. E2018-00135-CCA-R3-ECN**
_____

Petitioner, James Dellinger, appeals the trial court's summary dismissal of his petition seeking to invalidate the sentence of death imposed for his conviction of first degree murder. The petition sought error coram nobis relief pursuant to Tennessee Code Annotated section 40-26-105, asserted that his sentence of death is an illegal sentence to be corrected pursuant to Tennessee Rule of Criminal Procedure 36.1, and that he is entitled to relief by "any other remedy that at common law exists." After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. JAMES CURWOOD WITT, JR., J., concurs in results only.

Amy Dawn Harwell and Richard L. Tennent, Office of the Federal Public Defender, Nashville, Tennessee, for the appellant, James Dellinger.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Michael L. Flynn, District Attorney General; and Ryan Desmond, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner lists five issues for review. Initially, we note that no evidentiary hearing was held in the trial court. Despite this fact, Petitioner's brief includes in the "Statement of the Issues" the first issue described as follows: "Does the record establish that [Petitioner] is intellectually disabled?" Obviously, no evidence was presented to the trial court because the petition was summarily dismissed. Nevertheless, Peititoner sets forth

in his brief thirteen pages of "evidence" he implies are proper for consideration by this court in this appeal.

The "evidence" Petitioner refers to was never offered at a hearing in the trial court, much less admitted as evidence. Almost one-half of Petitioner's argument in his brief is devoted to his assertion that he is intellectually disabled. Whether or not he is intellectually disabled is not an issue, standing alone, in this appeal.

Furthermore, Petitioner's "Statement of the Issues" does not match the presentation of issues in the argument section of his brief. After reviewing arguments of an issue not addressed by the trial court, and the somewhat befuddling organizational differences between the other stated issues and the presentation of arguments in Petitioner's brief, we conclude that the State's brief more accurately states the issues we must review. These are:

1. Whether the trial court properly dismissed the petitioner's second petition for writ of error coram nobis without an evidentiary hearing;

2. Whether the trial court properly denied the petitioner's motion to correct an illegal sentence after determining that the petitioner's sentence was authorized by the statute at the time of its imposition; and

3. Whether the trial court properly denied the petitioner's claim that the court was required to provide him with a procedural vehicle to obtain relief.

**Trial Court's Order**

In its order dismissing the petition, the trial court provided a detailed history of Petitioner's case. That history does not need to be presented again in this appeal. In fact, it is also set forth in an opinion of this court addressing a prior request for error coram nobis relief (and other theories) by Petitioner, also based upon his alleged intellectual disability. *See James Dellinger v. State*, No. E2013-02094-CCA-R3-ECN, 2015 WL 4931576, at *1-*6 (Tenn. Crim. App. Aug. 18, 2015) *perm. app. denied* (Tenn. May 6, 2016). In that case it was noted that Petitioner's request for error coram nobis relief was filed on February 6, 2013, more than fifteen years after expiration of the applicable one year statute of limitations. *Id*. at *9. After a thorough analysis, the panel of this court held that the error coram nobis petition, based upon Petitioner's claim that his alleged intellectual disability prohibited his sentence for the death penalty, was barred by the one year statute of limitations. The court also concluded that constitutional rights to due process did not require tolling of the statute of limitations. *Id*. at *13.

After providing the history of Petitioner's case, the trial court in the case *sub judice* summarily dismissed Petitioner's error coram nobis claim based upon the Tennessee Supreme Court's holding in *Payne v. State*, 493 S.W.3d 478 (Tenn. 2016) that a petition for writ of error coram nobis "is not the appropriate procedural mechanism for pursuing the Petitioner's claim of intellectual disability. . . . the Petitioner has failed to state a claim that is cognizable under the coram nobis statute." *Id*. 493 S.W.3d at 486.

The trial court next addressed Petitioner's claim that his death sentence is an illegal sentence and must be set aside pursuant to Tennessee Rule of Criminal Procedure 36.1. Based upon the fact that Rule 36.1 defines an illegal sentence as one that is not authorized by or one that directly contravenes applicable statutes, and the fact that a sentence of death was statutorily authorized for first degree murder, the trial court concluded that Petitioner was not entitled to relief pursuant to Rule 36.1.

Finally, as to Petitioner's claim for relief from his death sentence pursuant to "any procedural vehicle identified by the Tennessee courts in the future," the trial court ruled that this theory for relief failed to state a claim for relief because "the Tennessee Supreme Court has not identified such a procedural vehicle."

**Analysis**

### I.      *Writ of Error Coram Nobis*

Petitioner argues that the writ of error coram nobis as a vehicle to address intellectual disability as a prohibition of his death sentence is not barred by *Payne*. Peititoner relies upon an unpublished opinion of this court in the case of *David Ivy v. State*, No. W2016-02454-CCA-R3-ECN, 2018 WL 625127 (Tenn. Crim. App. Jan. 30, 2018) in support of this assertion. In *David Ivy*, the panel concluded that in *Payne*, our supreme court found that as to an intellectual disability claim, "a writ of error coram nobis was not the proper avenue for relief in that particular case because the petitioner was 'attempting to challenge his sentence of death based on changes in the law that occurred many years after his trial.'" *David Ivy*, 2018 WL 625127 at *3 (quoting *Payne*, 493 S.W.3d at 486).

We respectfully disagree with the conclusion of our colleagues in *David Ivy* that the holding in *Payne* does not apply whenever a petitioner's death penalty is imposed *after* the statutory law prohibiting execution of intellectually disabled defendants (Tenn. Code Ann. § 39-13-203, enacted 1990) or the case law doing the same (*Van Tran v. State*, 66 S.W.3d 790, 812 (Tenn. 2001) became effective. Peititoner, who is represented in the case *sub judice* by one of the attorneys who represented Mr. Ivy, has seized the ruling in *David Ivy* to argue that since he went to trial in 1996 after Tennessee Code Annotated

Section 39-13-203 was enacted, then *Payne* does not bar his effort to set aside his death sentence by a petition for error coram nobis relief. We respectfully conclude that the panel's conclusion in *David Ivy* placed undue emphasis on a passing phrase in our supreme court's *Payne* opinion, and that the *David Ivy* panel's conclusion on this issue is incorrect.

The ruling of our supreme court in *Payne*, which contains the phrase relied upon in *David Ivy*, states,

> The gravamen of the Petitioner's claim in this proceeding is that he is ineligible to be executed because he is intellectually disabled. We reiterate our commitment "to the principle that Tennessee has no business executing persons who are intellectually disabled." [*Keen v. State*, 398 S.W.3d 594, 613 (Tenn. 2012)]. However, we also are committed to not contorting Tennessee's statutes under the guise of construction.

> The evil that the coram nobis statute is aimed at remedying is a conviction based on materially incomplete or inaccurate information. It is not intended to provide convicted felons a second trial due to subsequent changes in the law. Here, the Petitioner is attempting to challenge his sentence of death based on changes in the law that occurred many years after his trial. A petition for writ of error coram nobis pursuant to Tennessee Code Annotated section 40-26-105(b) is not the appropriate procedural mechanism for pursuing the Petitioner's claim of intellectual disability. *We hold that the Petitioner has failed to state a claim that is cognizable under the coram nobis statute.* Therefore, we need not address the trial court's ruling on the statute of limitations.

*Payne*, 493 S.W.3d at 486 (emphasis added).

Even if the panel in *David Ivy* is correct in its interpretation of *Payne*, Petitioner is not entitled to relief for two reasons. First, Petitioner heavily relies upon the cases of *Coleman v. State*, 341 S.W.3d 221 (Tenn. 2011), *Keen v. State*, 398 S.W.3d 594 (Tenn. 2012), *Atkins v. Virginia*, 536 U.S. 304 (2002), *Moore v. Texas*, 581 U.S. ____, 137 S. Ct. 1039 (2017), and *Hall v. Florida*, 572 U.S. ____, 134 S. Ct. 1986 (2014) to assert that determinations of intellectual disability have expanded greatly, requiring consideration of many more factors than those considered at the time of his trial in 1996. Accordingly, Petitioner's error coram nobis claim is actually based on changes in the law that occurred several years after his trial. Thus, if we accepted Petitioner's argument that *Payne* only applies when pertinent changes in the law are developed many years after Petitioner's

- 4 -

trial, then *David Ivy* actually supports the conclusion that Petitioner is barred from presenting his claim via error coram nobis petition.

Second, a panel of this court has already held that Petitioner's ability to challenge his death sentence due to alleged intellectual disability, via error coram nobis relief, is barred by the one year statute of limitations. *See James Dellinger*, 2015 WL 4931576, at *13. The doctrine of collateral estoppel prohibits relitigation of this issue.

> Collateral estoppel is an issue preclusion doctrine. *See Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992); *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989). Once an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different. [citations omitted] It applies to both issues of law and issues of fact.

*State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178-79 (Tenn. Ct. App. 2000) (cited with approval in *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001)).

As noted above, this court has already determined that Petitioner's error coram nobis petition requesting relief based upon intellectual disability is barred by the one year statute of limitations, and due process does not require tolling of the statute of limitations. *James Dellinger*, 2015 WL 4931576, at *13. Petitioner's request for error coram nobis relief has no merit.

## II.    *Relief Pursuant to Tennessee Rule of Criminal Procedure 36.1*

Petitioner argues that his sentence of death is illegal, and pursuant to Tennessee Rule of Criminal Procedure 36.1, he is entitled to have his sentence corrected. This is based on the premise that Petitioner is, in fact, intellectually disabled; that execution of an intellectually disabled person is unconstitutional based upon *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242 (2002) and *Van Tran v. State*, 66 S.W.3d 790 (Tenn. 2001); and that *Montgomery v. Louisiana*, ____ U.S. ____, 136 S. Ct. 718 (2016) mandates that an unconstitutional death sentence is void, even if the sentence was imposed prior to the law being changed to prohibit the death sentence in Petitioner's case.

A death sentence was, at the time it was imposed in Petitioner's case, and through the present time, authorized by statute. Tenn. Code Ann. § 39-13-202(c)(1). However, certain collateral factors determine whether a statutorily authorized sentence of death for a conviction of first degree murder can be imposed. (Statutory aggravating factor(s) must

outweigh mitigating factors beyond a reasonable doubt, Tenn. Code Ann. § 39-13-204(g)(1)(A)(B); imposition of the death penalty must be proportionate, Tenn. Code Ann. § 39-13-206(c)(1)(D); a statutorily lawful death sentence cannot be imposed on a person who is intellectually disabled, *Atkins*, 122 S. Ct. at 2252; *Van Tran*, 66 S.W.3d at 809-812); a death sentence cannot be imposed upon a person who is intellectually disabled, Tenn. Code Ann. § 39-13-203.

The judgment in Petitioner's case shows that a jury convicted him of first degree murder and that the sentence of death was imposed on September 3, 1996, for a murder committed February 21, 1992. There is nothing on the face of the judgment that indicates the sentence of death for first degree murder was not authorized by statute, or that it directly contravenes an applicable statute.

In reviewing Petitioner's assertion that he is entitled to relief pursuant to Rule 36.1, we must keep in mind that we are required to follow precedent established by our supreme court. In *State v. Wooden*, 478 S.W.3d 585 (Tenn. 2015), our supreme court noted the definition of an "illegal sentence" in Rule 36.1 is one "that is not authorized by the applicable statutes or that directly contravenes an applicable statute." *Id.*, 478 S.W.3d at 594. The types of sentences that can be deemed illegal "for purposes of Rule 36.1" *id.*, 478 S.W.3d at 595, are "fatal errors." *Id.* In addition to fatal errors, there are clerical errors, which result from a mistake in filling out the judgment document, *id.*, and appealable errors, which are errors that the "Sentencing Act specifically provides a right of direct appeal." *Id.* (quoting *Cantrell v. Easterling*, 346 S.W.3d 445, 449 (Tenn. 2011)). "Included in this category are claims 'akin to . . . challenge[s] to the sufficiency of the evidence supporting a conviction,' such as claims that the record does not support the trial court's factual findings regarding sentencing." *Wooden*, 478 S.W.3d at 595 (quoting *Cantrell*, 346 S.W.3d at 450-52).

Tennessee Code Annotated section 39-13-203(b) establishes that "no defendant with intellectual disability at the time of committing first degree murder shall be sentenced to death." This statutory prohibition has existed since 1990, prior to the murder for which Petitioner was convicted. Also, at the time of Petitioner's trial, and continuing to the present, the determination of whether a defendant is intellectually disabled is to be made by the court prior to the trial on the merits. *Payne*, 493 S.W.3d at 488 ("The remaining provisions of the intellectual disability statute also lead to the inescapable conclusion that the legislature intended a claim of intellectual disability to be raised in conjunction with the capital defendant's *trial,* not in a collateral proceeding many years later."). If the trial court determines that a defendant is not intellectually disabled, the issue may be a basis for direct appeal by the defendant after the sentencing portion of the trial for first degree murder. Accordingly, the issue of whether the death penalty can be imposed upon an intellectually disabled defendant, in violation of

Tennessee Code Annotated section 39-13-203(b), is clearly an "appealable error" as that term is defined in *Cantrell* and *Wooden*.

Furthermore, the only sentence errors which are rendered illegal sentences pursuant to Rule 36.1 are fatal errors. *Wooden*, 478 S.W.3d at 595.

> Included in this category [of fatal errors] are sentences imposed pursuant to an inapplicable statutory scheme, sentences designating release eligibility dates where early release is statutorily prohibited, sentences that are ordered to be served concurrently where statutorily required to be served consecutively, and sentences not authorized by any statute *for the offenses*.

*Id*. (emphasis added).

Of the above quoted categories, the only one which might arguably apply pursuant to Petitioner's assertions in this appeal is the last one. However, the flaw in Petitioner's argument that he is entitled to relief under Rule 36.1 is that a sentence of death is clearly authorized for his conviction *offense* of first degree murder. The term "fatal error" applies to situations where the sentence is not authorized for the *offense*, not to situations where the sentence is not authorized for the *person* who is convicted of the offense. Rule 36.1's applicability is clearly limited to a specific sentence that is not authorized by and/or is in direct contravention of a *statute(s)*. Tenn. R. Crim. P. 36.1(a)(2). It does not apply to a sentence that is unconstitutional and thus directly contravenes *case law*. We do not dispute that *Montgomery v. Louisiana* may very well entitle Petitioner to relief. However, this relief cannot be granted through Tennessee Rule of Criminal Procedure 36.1.

### III. Right to a Remedy

As we construe Petitioner's argument, he asserts that if he is not entitled to relief under either error coram nobis proceedings or pursuant to Tennessee Rule of Criminal Procedure 36.1, a remedy is still mandated by *Montgomery*, *Ford v. Wainwright*, 477 U.S. 399, 416-17 (1986), and *Van Tran v. State*, 6 S.W.3d, 257 (Tenn. 1999). While acknowledging that this particular *Van Tran* decision was abrogated by *State v. Irick*, 320 S.W.3d 284, 294-95 (Tenn. 2010), Petitioner asserts that *Irick* upheld *Van Tran's* requirement that under appropriate circumstances an incompetency hearing must be held prior to an execution.

Petitioner candidly admits that this court can defer to the Tennessee Supreme Court to "fashion the parameters" of a new judicially created remedy. That is exactly what we conclude we should do.

In his amended petition in the trial court, submitted following our supreme court's decision in *Payne*, Petitioner includes the following plea for relief to which he asserts he is entitled:

> In this amended motion for relief, [Petitioner] continues to press his request for relief pursuant to any procedural vehicle which may be identified by the Tennessee courts as the appropriate vehicle for the vindication of his claims. [Petitioner's] claim pursuant to the Eighth Amendment and the Tennessee Constitution that he is intellectually disabled and therefor not eligible for execution must, at some point, be heard – by some court, somewhere.

It appears that the issue of intellectual disability was heard by a trial judge in Petitioner's first hearing for post-conviction relief. According to the procedural history set out by a panel of this court addressing Petitioner's first error coram nobis proceedings, Petitioner argued in this post-conviction petition that he was ineligible to be executed because of his intellectual disability and that his trial attorneys rendered ineffective assistance of counsel by not developing evidence of intellectual disability. *James Dellinger*, 2015 WL 4931576, at *2. Post-conviction counsel presented the testimony of an expert witness in clinical psychology and in the psychology of rural Appalachia. The expert witness testified extensively about Petitioner's condition. While the witness noted multiple deficits in Petitioner's IQ, verbal reasoning, literacy, grade level (first or second grade), personality development, and cognitive limitations, the limitations "were not 'to the degree where he's [intellectually disabled], by any means.'" *Id*. The post-conviction court denied relief, noting the testimony of the expert that Petitioner was not intellectually disabled. The claims pertaining to intellectual disability were not pursued on appeal of the post-conviction court's denial of relief. *Id*. Ultimately, the post-conviction court's judgment denying relief was affirmed by the Tennessee Supreme Court. *Dellinger v. State*, 279 S.W.3d 282, 285-86 (Tenn. 2009).

Attached to Petitioner's amended petition in the case *sub judice* are lengthy affidavits of Petitioner's two attorneys in his initial post-conviction proceedings ultimately decided against Petitioner in *Dellinger v. State*, 279 S.W.3d 282 (Tenn. 2009). Both attorneys state under oath that they rendered deficient performance representing petitioner in his post-conviction proceedings, including the issues related to Petitioner's assertion of intellectual disability. However, even if taken as fact that post-conviction counsel rendered ineffective assistance of counsel by failing to develop available proof

- 8 -

that Petitioner's intellectual disability voids his sentence of death, Petitioner has no remedy for that transgression. It is clear in Tennessee that a Peititoner is not entitled to effective assistance of counsel in post-conviction proceedings, even in capital cases. *Stokes v. State*, 146 S.W.3d 56, 60 (Tenn. 2004).

The door to a proceeding to now present Petitioner's claim of intellectual disability has been closed in post-conviction (initial proceedings and motion to reopen); error coram nobis; writ of audita querala; declaratory judgment; pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); due process; law of the land; open courts provision of the United States and Tennessee Constitutions; and violations of double jeopardy. *See James Dellinger*, 2015 WL 4931576.

As far as we are able to discern, Petitioner has no state court remedy in order to present his claim that the sentence of death is void due to his alleged intellectual disability. The one time that the issue has been submitted to a trial court for consideration, the witness who testified on behalf of Petitioner testified that he was not intellectually disabled. *See James Dellinger*, 2015 WL 4931576, at *2.

In *Keen v. State*, 398 S.W.3d 594 (Tenn. 2012), our supreme court held that the petitioner in that case did not have the ability to assert he was intellectually disabled in a motion to reopen his post-conviction proceedings pursuant to Tennessee Code Annotated section 40-30-117(a)(1) and (2). The court acknowledged that the petitioner "deserves to be heard" if "he is indeed intellectually disabled." *Id.* 398 S.W.3d at 613. The court also noted that its ruling "does not foreclose the ability of the [Tennessee] General Assembly to create a procedure that accommodates prisoners on death row whose intellectual disability claims cannot be raised under Tenn. Code Ann. § 40-30-117(a)(1) or (2)." *Id.* It has been a few months more than eight years since *Keen* was filed on December 20, 2012. The General Assembly is in its seventh session since *Keen* was filed and no legislation establishing a procedure mentioned in *Keen* has become law. We note, however, that in its current session, the General Assembly passed, and the Governor has signed into law, legislation which eliminates appellate review by the Court of Criminal Appeals in direct appeals from the imposition of death sentences. *See* SB 400/HB 0258**.** This legislation reduces state appellate court review of death sentences by fifty (50%) percent on direct appeal.

CONCLUSION

We affirm the judgment of the trial court summarily dismissing the petition, as amended, without an evidentiary hearing. The relief sought by Petitioner cannot be presented in an error coram nobis proceeding or as an "illegal sentence" pursuant to

- 9 -

Tennessee Rule of Criminal Procedure 36.1. In addition, it appears that Petitioner has no available state procedure to present his claim of intellectual disability as a result of the holdings in *Keen*, *Payne*, and *James Dellinger*.

_____
THOMAS T. WOODALL, JUDGE