IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 5, 2019

**PAUL HAYES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 99-01385          Chris Craft, Judge

_____

**No. W2018-01555-CCA-R3-ECN**

_____

Petitioner, Paul Hayes, filed a petition for writ of error coram nobis based on a victim recanting her identification of him as one of the perpetrators of a home invasion that took place over two decades ago. The petition was denied by the trial court both for having been untimely filed and because the new evidence was neither credible nor was likely to have changed the outcome of the trial. On appeal, we affirm the judgment of the trial court that the petition should be denied on the merits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Melody M. Dougherty (on appeal) and Lauren Fuchs (at hearing), Memphis, Tennessee, for the appellant, Paul Hayes.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Amy Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was convicted by a jury of one count of aggravated burglary and two counts of aggravated robbery and received an effective sentence of seventy-five years. On direct appeal, this Court summarized the proof presented at trial:

> On October 26, 1998, the victims, Saeed Zarshenas and his guest, Jacquelyn Scruggs, were dining at Zarshenas' home in Germantown. After

Zarshenas finished eating, he went to the backyard to smoke a cigarette. While Zarshenas was smoking, Brian Kimbrough jumped over the backyard fence, yelling, "D.E.A.," and asking where the guns and drugs were located. Kimbrough ordered Zarshenas back inside the home at gunpoint, forced him to the kitchen floor, and handcuffed him. [Petitioner] followed Kimbrough into the house, grabbed Scruggs from behind, and held a gun to her head. [Petitioner] removed her ring and necklace and took $200 from her purse. Scruggs was then forced to the floor, handcuffed, gagged, and a hood was placed over her head. Two other accomplices, Dexter Futrell and "Shorty," had also entered the house.

The four men began to search the home looking for drugs and money. Zarshenas was blindfolded, gagged, and his feet were tied together. The men kept asking, "Where is the safe?" Zarshenas responded that he did not have a safe, which only angered the men. Zarshenas and Scruggs were "just dragged around and pushed and punched," and Zarshenas was stabbed several times in the buttocks and burned multiple times with a cigarette lighter. Also, sexual advances were made towards Scruggs. One of the men located a briefcase containing $5,000 in Zarshenas' car. The men also took a camcorder, leather jacket, collector's knife, jewelry, and $1,500 found inside a suitcase. The men left through the back door, which sounded the home invasion alarm. After [Zarshenas] was certain the men had exited the residence, he freed himself from his restraints, called 911 and, then, helped Scruggs free herself from her restraints.

A Shelby County grand jury indicted [Petitioner], Futrell, and Kimbrough for aggravated burglary and two counts of aggravated robbery. The identity of "Shorty" was never determined. Futrell and Kimbrough pled guilty and received eight-year sentences.

*State v. Paul Hayes*, No. W2001-02637-CCA-R3-CD, 2002 WL 31746693, at *1 (Tenn. Crim. App. Dec. 6, 2002), *perm. app. denied* (Tenn. May 27, 2003). This Court held that the evidence was sufficient to sustain Petitioner's convictions because both victims identified Petitioner as one of the perpetrators, corroborating Codefendant Futrell's testimony that Petitioner was involved, even though Petitioner presented the testimony of two alibi witnesses and Codefendant Kimbrough testified that Petitioner was not involved. *Id*. at *7. Petitioner subsequently sought post-conviction relief, the denial of which was affirmed on appeal. *Paul Hayes v. State*, No. W2006-02344-CCA-R3-PC, 2008 WL 199839, at *1 (Tenn. Crim. App. Jan. 23, 2008) (holding that Petitioner was not entitled to relief due to an inadequate appellate brief), *no perm. app. filed*.

On June 1, 2016, Petitioner filed a petition for writ of error coram nobis on the basis that one of the victims had recanted her identification of Petitioner. He attached to the petition an affidavit executed by Jacquelyn Scruggs on May 19, 2016. A bifurcated evidentiary hearing was held on April 13 and May 18, 2018, at which Petitioner presented the testimony of Ms. Scruggs as well as private investigator Clark Chapman.

Mr. Chapman was appointed to investigate Petitioner's case when he was originally indicted. At that time, Ms. Scruggs expressed a possibility that she had made a mistake in identifying Petitioner as one of the perpetrators of the home invasion, but she did not recant her identification at trial. Petitioner contacted Mr. Chapman in 2016 with information about a new suspect and asked him to find out if the State had ever presented this information to Ms. Scruggs. When Mr. Chapman contacted Ms. Scruggs, she expressed further concerns about her original identification of Petitioner and her feeling that she had been coerced by the police.

According to Ms. Scruggs, even though she initially told the detectives that she was not able to identify anyone because she had been blindfolded, one of the detectives suggested she look at some pictures in case she recalled a face. Ms. Scruggs used her finger as a guide as she was scanning the pictures, and when she got to Petitioner's picture, the detective said, "Think real hard about it." Ms. Scruggs "really couldn't identify the picture," but she said, "['] maybe he's the one['] and the detective said [']okay, we've got it.[']" Even though the detective did not tell her which photograph to pick, Ms. Scruggs felt that his statement put emphasis on Petitioner's picture and influenced her identification. Additionally, "somewhere along the line something was said about if he didn't do it, he did something." Ms. Scruggs considered recanting her identification of Petitioner at trial, but she lost the courage to do so after Petitioner's mother "was very, very rude" to her during an encounter outside of the courtroom. Even though Ms. Scruggs had worried about her identification of Petitioner "for years" and "appreciate[d] the opportunity to correct it if possible," she did not reach out to Petitioner or his attorneys during those intervening years or discuss the identification procedure until she was contacted by Mr. Chapman in 2016.

On cross-examination, Ms. Scruggs did not recall much of her trial testimony even though she had reviewed the transcript approximately a year before the hearing. Ms. Scruggs did not recall testifying at trial that she initially had some concerns about her ability to identify the perpetrators until she was shown a video lineup that contained the suspect's voice. Ms. Scruggs recalled telling the detectives that she really needed to hear the person's voice in order to be sure of her identification. Ms. Scruggs did not recall testifying that she saw two individuals with guns prior to being blindfolded or that she could see some through the hood, a thin pillowcase. Ms. Scruggs explained that the perpetrators came into the house from the back and that all she could see were "figures of people and . . . the gun . . . but not to the point where [she] could place a face well." She

- 3 -

did recall looking back as the second person to enter the house grabbed her from behind. However, she tried to not look at their faces because she was afraid they would kill her. Ms. Scruggs did not recall being cross-examined by defense counsel about her doubts about her ability to identify the perpetrators. She also did not recall her inability to identify Petitioner in court as the person she had identified in the video lineup. Ms. Scruggs agreed that the bases of her current doubts – her inability to see and the chaos of the home invasion – were the same as what she testified to at trial. Ms. Scruggs agreed that she would not be able to identify someone if she was presented with a new suspect.

On July 9, 2018, the trial court issued an order denying the petition for writ of error coram nobis. The trial court found that the petition was filed over fifteen years after the expiration of the statute of limitations and that Petitioner offered no explanation as to why he waited so long to have his investigator re-interview Ms. Scruggs, who the trial court described as "a witness, 20 years after the offense, claiming that she is not so sure of her identification." The trial court found that Ms. Scruggs "has little memory of her trial testimony or the identification procedures she followed[,] . . . offered no proof that the [P]etitioner was innocent, could not say whether or not the [P]etitioner was one of the perpetrators and asserted that she did not think that she could identify the perpetrator at all." The trial court further found that even if the petition was not dismissed as untimely, it would be denied on the merits. The trial court found that that Ms. Scruggs's hearing testimony that the police coerced her into identifying Petitioner in a photospread "cannot possibly be correct, since at trial she made no photospread identification of the [P]etitioner in Trial Exhibit 16." Moreover, Ms. Scruggs testified at trial that she did not get a good look at the perpetrators, failed to identify Petitioner in court, and actually identified Petitioner from a video lineup, of which she had no memory at the hearing. Therefore, the trial court concluded that Ms. Scruggs's testimony at the coram nobis hearing, "assuming that Ms. Scruggs'[s] faulty memory of her trial testimony could be considered a 'recantation,'" "would not have changed the results of the trial" given the strength of the other evidence against Petitioner.

*Analysis*

On appeal, Petitioner argues that the trial court erred in finding that Petitioner's claim was time barred and that Ms. Scruggs's recantation did not constitute newly discovered evidence. Petitioner theorizes that if Ms. Scruggs had testified at trial about the police coercion during the identification procedures, then the jury may have also doubted his identification by the other victim, Mr. Zarshenas, "which took place the same week and under the same conditions"; thus, the only evidence against him would be the uncorroborated testimony of his codefendant, Futrell. The State responds that the trial court properly denied coram nobis relief.

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105(b); *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). "[T]he purpose of coram nobis proceedings 'is to bring to the attention of the court some fact unknown to the court, which if known [may] have resulted in a different judgment.'" *Payne v. State*, 493 S.W.3d 478, 485 (Tenn. 2016) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1966)). The writ of error coram nobis is "an *extraordinary* procedural remedy" designed to fill "only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original).

To obtain coram nobis relief, the petitioner must prove "(1) that he or she was reasonably diligent in seeking the evidence; (2) that the evidence is material; and (3) that the evidence is likely to change the result of the trial." *State v. Hall*, 461 S.W.3d 469, 495 (Tenn. 2015). "Newly discovered evidence that is merely cumulative or serves no other purpose than to contradict or impeach does not warrant coram nobis relief." *Id*. (internal quotations omitted). In the context of recanted testimony by a witness, coram nobis relief is warranted when:

> (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

*Mixon*, 983 S.W.2d at 673 n.17. The trial court should consider both the evidence at trial and the evidence presented at the coram nobis proceeding in determining "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *State v. Vasques*, 221 S.W.3d 514, 526-27 (Tenn. 2007). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *Hall*, 461 S.W.3d at 496.

A petition for a writ of error coram nobis must be filed within one year after the judgment becomes final. T.C.A. § 27-7-103. For the purposes of coram nobis relief, a judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. It has been the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Id.* Timely filing is an essential element of a coram nobis petition, and the State is not required to raise the statute of limitations as an affirmative defense. *Nunley*, 552 S.W.3d at 828. However, "[t]o accommodate due process concerns, the one-year statute of

limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period." *Id.* at 828-29. "'[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" *Workman v. State*, 41 S.W.3d 100, 102 (Tenn. 2001) (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). Whether a petitioner is entitled to due process tolling of the statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Nunley*, 552 S.W.3d at 830 (citation omitted).

In this case, Petitioner acknowledged that he filed his petition for writ of error coram nobis outside of the one-year statute of limitations but requested that the statute of limitations be tolled on due process grounds because Ms. Scruggs did not recant her identification until 15 years after his conviction became final. The trial court found that the petition was untimely because Petitioner failed to establish that he was reasonably diligent in discovering the new evidence. Specifically, the trial court stated that "no proof was offered by the [P]etitioner as to why, 15 years after the judgment had become final, the [P]etitioner suddenly asked his investigator to re-interview Ms. Scruggs." However, based on our de novo review of the record, Mr. Chapman testified that he contacted Ms. Scruggs in 2016 on Petitioner's behalf with information regarding a possible new suspect. It was at that point that Ms. Scruggs spontaneously stated that she felt like her identification of Petitioner had been coerced by the police and wanted to recant. Even though Mr. Chapman had previously discussed with Ms. Scruggs her difficulty in identifying Petitioner prior to trial, there was no reason that Petitioner should have known that Ms. Scruggs wanted to recant her identification at that time. She admitted during the evidentiary hearing that she chose not to recant her identification at trial and that she did not tell anyone, including Petitioner and his attorney, that she wanted to recant her identification until she spoke to Mr. Chapman in 2016. The proof at the hearing indicates Petitioner "was unable to know of" her recantation and "was surprised by" her allegation of police coercion. *See Mixon*, 983 S.W.2d at 673 n.17. Once Ms. Scruggs made her recantation known to Mr. Chapman, Petitioner was reasonably diligent in securing an affidavit and filing his petition for writ of error coram nobis within just a few months of her conversation with Mr. Chapman. Therefore, we hold that due process did require tolling of the one year statute of limitations.

However, we agree with the trial court that Petitioner is not entitled to coram nobis relief on the basis of Ms. Scruggs's recanted testimony. The majority of Ms. Scruggs's hearing testimony was "merely cumulative" of her trial testimony. *See Hall*, 461 S.W.3d at 495. She testified to her lack of confidence in her identification at trial and was thoroughly cross-examined by defense counsel on the issue. The only "new" evidence presented at the coram nobis hearing was the allegation that a police officer had

"coerced" her identification of Petitioner by commenting "think real hard" while her finger hovered over his picture in a photospread. However, the trial court discredited this testimony, finding that it "cannot possibly be correct" given the disparities between her trial testimony regarding the identification procedures and her hearing testimony twenty years later. Because the trial court was not "reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true," coram nobis relief was not warranted. *Mixon*, 983 S.W.2d at 673 n.17. Moreover, Petitioner presented no evidence at the hearing that the police used similar allegedly coercive tactics with Mr. Zarshenas or anything that would call into question the reliability of his identification, which was based on his ability to observe the perpetrators entering his backyard. Given the strength of the remaining evidence against Petitioner, we agree with the trial court that Ms. Scruggs's recanted testimony is not likely to have changed the outcome of Petitioner's trial. *See Hall*, 461 S.W.3d at 495. Petitioner has not established that the trial court abused its discretion in denying the petition for writ of error coram nobis.

## *Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE