IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 3, 2021 Session

**EARLEY STORY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 97-08560          Chris Craft, Judge

_____

**No. W2019-01406-CCA-R3-ECN**

_____

The petitioner, Earley Story, appeals the denial of his petition for writ of error coram nobis by the Shelby County Criminal Court, arguing the trial court erred in dismissing the petition because newly discovered evidence exists which is material to his case. After our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Earley Story.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural History*

In December 1999, a Shelby County jury convicted the petitioner of the sale of marijuana for which he received a sentence of one year suspended to probation. In affirming the petitioner's conviction and sentence on appeal, the Court summarize the relevant facts as follows:[1]

_____

[1] The petitioner was charged with three counts of selling marijuana; however, the jury only found him guilty on one count. Accordingly, we have only recited the facts relating to the petitioner's conviction.

The State presented testimony regarding a third arranged buy on January 22, 1997. Detective [Carl] Harrison, Agent [Jeffrey] Butler, and [Alfredo] Shaw[, a cooperating individual,] repeated their established procedure and met at Church's Chicken where Detective Harrison supplied Agent Butler with a microcassette recorder and eight hundred and fifty dollars ($850). Agent Butler and Shaw again returned to the residence at 1349 Standridge. When they approached the residence, the [petitioner] and Dante Dale instructed the pair to proceed to Mok's Grocery for the transaction. The two men did so, and waited a few minutes for the [petitioner] and Dale to arrive. Shortly thereafter, the [petitioner] and Dale, driving a "grayish-brown Cadillac," met Agent Butler and Shaw behind Mok's Grocery. Dale was driving the vehicle and the [petitioner] was in the front passenger seat. Agent Butler and Shaw got into the rear passenger compartment of the vehicle. Agent Butler gave the [petitioner] eight hundred and fifty dollars ($850) for the purchase of one pound of marijuana. The [petitioner] gave the packaged marijuana to Dale, who in turn passed the marijuana to Shaw. Agent Butler and Shaw returned to the undercover vehicle. They immediately proceeded to a meeting with Detective Harrison and relinquished possession of the recorder and the marijuana. Detective Harrison testified that the substance weighed 307.0 grams. [Friderica] Saharovici[, with the University of Tennessee's Toxicology Laboratory,] again attested that the substance "contain[ed] tetrahydrocannabinol which is the active ingredient in marijuana."

At trial, the [the petitioner] denied involvement in any of the transactions. The [petitioner] testified that, at the time of the alleged January 9, 1997, transaction, he was at his sister's house picking up a prescription for his mother. The [petitioner]'s sister supported the [petitioner]'s version of events. The [petitioner] further contended that, at the time of the January 15, 1997, drug deal, he was at home with his family, either in bed or working on his car. Both the [petitioner]'s wife and daughter corroborated the [petitioner]'s alibi. Additionally, the [petitioner] contended that he was home at the time of the January 22, 1997, transaction. The [petitioner]'s wife maintained that she did not recall the [petitioner] leaving home on January 22, 1997. Moreover, the [petitioner] asserted that, prior to the commencement of the instant legal proceedings, he had never met Etienne Harmon or Dante Dale.

*State v. Earley Story*, No. W2001-00529-CCA-R3-CD, 2002 WL 31257803, at *2 (Tenn. Crim. App. Sept. 13, 2002), *perm. app. denied* (Tenn. Sept. 13, 2002).

On October 29, 2018, the petitioner filed the instant pro se petition for writ of error coram nobis, arguing he had newly discovered evidence material to his case. Specifically, the petitioner stated he recently received a copy of the log from the Narcotics Unit for the Shelby County Sheriff's Department ("the log")[2] which showed monies provided to certain confidential informants, including Mr. Shaw, for undercover transactions on certain dates but does not show money provided to Mr. Shaw on January 22, 1997. According to the petitioner, the log, therefore, reveals that neither Mr. Shaw nor the petitioner were involved in an undercover drug transaction on that date. The State filed a motion to dismiss. A hearing on the State's motion was held on June 21, 2019.

After initially questioning whether the petition was timely and/or whether the statute of limitations should be tolled, the State argued that based on the testimony presented at trial, the log would not have had an impact on the petitioner's case. The State noted the proof at trial revealed that "the buy was made directly by [Agent Butler] and that the money [was] never passed or transferred to Mr. Shaw in order to make that buy." After noting the petitioner was acquitted on two other charges because his alibi defense was credited by the jury, the State reminded the trial court that the petitioner was unable to present a credible alibi for January 22. Further, the proof revealed it was "Agent Butler who had the money, Agent Butler who had the microcassette recording that transaction, Agent Butler who then received the drugs, and Agent Butler who then turned [the drugs] over to Detective, I believe, Harrison. And so, nothing about the log, the State submits, would change the circumstances of that trial."

At the conclusion of the hearing, the trial court agreed with the State "that if [the petitioner] had known about this log book at the time of trial in 1997, that because the person who testified that they bought drugs from [the petitioner] was not Mr. Shaw but was [Agent Butler], this would not have made a difference and I agree." Accordingly, the trial court dismissed the petition. This timely appeal followed.

***Analysis***

On appeal, the petitioner contends the trial court erred in dismissing his petition. He argues that the fact Mr. Shaw is not listed on the log for January 22, 1997, raised serious questions about the State's case. The State submits the log "merely [serves] the purpose to impeach or contradict the evidence at trial," and therefore, is not a proper basis for a writ of error coram nobis. Additionally, the State argues "there is no reasonable probability that the new information might have changed the outcome of the trial." Upon our review of

---

[2] We note that while the copy of the log included in the record on appeal is difficult to read, if not illegible, such did not have an effect on the conclusions reached by this Court.

the record, the applicable law, and the arguments of the parties, we agree with the State and affirm the decision of the trial court.

A writ of error coram nobis is available to convicted defendants based on subsequently or newly discovered evidence. Tenn. Code Ann. § 40-26-105(a), (b) (2006). However, a writ of error coram nobis is an "*extraordinary* procedural remedy" that "fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citing *Penn v. State*, 670 S.W.2d 426, 428 (Ark. 1984)); *State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002)).

"It may be granted only when the coram nobis petition is in writing, describes 'with particularity' the substance of the alleged newly discovered evidence, and demonstrates that it qualifies as newly discovered evidence." *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (citing and quoting *Payne v. State*, 493 S.W.3d 478, 484-85 (Tenn. 2016)). "In order to qualify as newly discovered evidence, 'the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible.'" *Id.* (quoting *Payne*, 493 S.W.3d at 484-85).

Additionally, the coram nobis petition must show why the newly discovered evidence "'could not have been discovered in a more timely manner with the exercise of reasonable diligence' and how the newly discovered evidence, had it been admitted at trial, 'may have resulted in a different judgment.'" *Id*. (quoting *Payne*, 493 S.W.3d at 484-85). "The statute presupposes that the newly discovered evidence would be admissible at trial." *Id.* (citing *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012); *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995)).

Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. The statute provides, in pertinent part:

> (b) The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding.

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *State v. Hall*, 461 S.W.3d 469, 496 (Tenn. 2015). If a petition for coram nobis relief is granted, the judgment of conviction will be set aside and a new trial will be granted. *Payne*, 493 S.W.3d at 485.

Petitions for coram nobis relief must be supported by affidavits that are "relevant, material, and germane to the grounds raised in the petition," and "the affiant must have personal knowledge of the statements contained in the affidavit." *Hart*, 911 S.W.2d at 375. "Affidavits which fail to meet these criteria will not justify the granting of an evidentiary hearing since the information contained in the affidavits, taken as true, would not entitle the petitioner to relief." *Id.* (citing *State v. Todd*, 631 S.W.2d 464, 466-67 (Tenn. Crim. App. 1981)).

"[C]oram nobis petitions with inadequate allegations are susceptible to summary dismissal on the face of the petition, without discovery or an evidentiary hearing." *Nunley*, 552 S.W.3d at 831. "This holding correlates with the 'less intense' abuse-of-discretion standard of appellate review for a trial court's decision on whether to grant a writ of error coram nobis." *Id.* at 826.

In addition to the requirements regarding specificity, petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103. The statute of limitations is calculated from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely, post-trial motion. *Payne*, 493 S.W.3d at 484; *Mixon*, 983 S.W.2d at 670. A petition for a writ of error coram nobis may be summarily dismissed if it fails to show on its face that it has been timely filed because the timely filing requirement in Code section 27-7-103 is an essential element of a coram nobis claim. *Nunley*, 552 S.W.3d at 828. "[T]he statute of limitations set forth in Section 27-7-103 is not an affirmative defense that must be specifically raised by the State in error coram nobis cases; instead, the coram nobis petition must show on its face that it is timely filed." *Id.*

Due process considerations may toll the one-year statute of limitations when a petitioner seeks a writ of error coram nobis. *Workman*, 41 S.W.3d at 101-102. Due process requires the tolling of a statute of limitations period when a petitioner would otherwise be denied "'an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" *Id.* at 102 (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). "To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon

new evidence of actual innocence discovered after expiration of the limitations period." *Nunley*, 552 S.W.3d at 828-29 (citing *Wilson*, 367 S.W.3d at 234).

"If a petition for a writ of error coram nobis fails to show on its face either that it has been timely filed in accordance with Tennessee Code Annotated section 27-7-103 or specific facts showing why the petitioner is entitled to equitable tolling of the statute of limitations, the trial court is within its discretion to summarily dismiss it." *Id.* A trial court is not required to conduct an evidentiary hearing prior to dismissing a coram nobis petition if the petition fails to meet the necessary prerequisites for granting coram nobis relief. *Id.* (citation and internal quotation marks omitted). Moreover, "[i]f the averments in the petition are insufficient to warrant relief, the petition may be dismissed prior to any response from the state and without a hearing." *Id.* (citation and internal quotation marks omitted).

While there is a legitimate question concerning the timeliness of the instant petition,[3] the trial court did not dismiss the petition based on timeliness. Rather, the trial court reviewed the merits of the petitioner's claim and found the petitioner was not entitled to relief. Because the trial court did not rule on the timeliness issue nor was the record developed concerning the same, we will only address the trial court's findings as to the merits of the petition.

At trial, both Agent Butler and Mr. Shaw testified that the buy money was given to Agent Butler by Detective Harrison; Agent Butler carried the money to the buy location; and Agent Butler gave the money to and received the drugs from the petitioner. Based on the proof presented at trial, at no point did Mr. Shaw handle the money. Thus, the petitioner's argument that the log casts doubt on the State's proof, amounts to nothing more than potential impeachment evidence. "As a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record, or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial, will not justify the granting of a petition for the writ of error coram nobis when the evidence, if introduced, would not have resulted in a different judgment." *Hart,* 911 S.W.2d at 375 (citations omitted). Therefore, the coram nobis court did not abuse its discretion by denying relief on this ground, and the petitioner is not entitled to coram nobis relief.

Finally, in a footnote, the petitioner alleges that the trial court applied the wrong standard in reviewing the petition. We disagree. In denying the petitioner's claim, the trial

---

[3] On direct appeal of his conviction, the Tennessee Supreme Court denied the petitioner's application for permission to appeal on January 27, 2003. The instant petition was then filed over 15 years later on October 29, 2018.

court found that the log "would not have made a difference." Contrary to the petitioner's claim, the language used by the trial court does not necessarily equate to the application of a wrong standard. While *Mixon* and *Vasques* formulate the standard for establishing entitlement to *coram nobis* relief as when the petitioner shows that the new evidence "may have" resulted in a different judgment, *see State v. Vasques,* 221 S.W.3d 514, 527 (Tenn. 2007); *State v. Mixon,* 983 S.W.3d 661, 672 (Tenn. 1999), one might view the trial court's phrasing in the present case as merely stating the correct standard in the negative. *See Kenneth Alan Steele v. State*, No. E2009-02376-CCA-R3-PC, 2011 WL 882998, at *9 (Tenn. Crim. App. Mar. 10, 2011) (Witt, J., concurring), *perm. app. denied* (Tenn. July 14, 2011). "Certainly, the more precise formulation of the opposite of 'may have' is '*could* not have' or '*cannot* have,' but still the court may have correctly determined that no possibility existed that the result of trial may have been different with the new evidence at play." *Id.* While the use of the *Mixon–Vasques* language would be preferable, we find no error in the ruling of the trial court in the instant matter.

## *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the coram nobis court is affirmed.

_____
J. ROSS DYER, JUDGE