IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 1, 2021

**MICHAEL KIZER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 10-08128      Jennifer J. Mitchell, Judge**

_____

**No. W2020-00929-CCA-R3-ECN**
_____

For offenses occurring in 2010, a Shelby County jury convicted the Petitioner, Michael Kizer, of two counts of aggravated robbery and one count of attempted aggravated robbery, and the trial court sentenced him to a total effective sentence of forty-five years of incarceration. This court affirmed the judgments on appeal. *State v. Michael Kizer*, No. W2013-02559-CCA-R3-CD, 2014 WL 5512863, at *1 (Tenn. Crim. App., at Jackson, Oct. 3, 2014), *perm. app. denied* (Tenn. Feb. 13, 2015). In 2017, the Petitioner filed a petition for a writ of error *coram nobis*. In it, he contended that there was newly discovered evidence about his mental capacity that was not considered by mental health professionals at the time of their evaluation. The *coram nobis* court summarily dismissed the petition, finding that the one-year statute of limitations had run and that the Petitioner had failed to establish that he was entitled to a hearing. The Petitioner filed this appeal. After review, we affirm the *coram nobis* court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Gerald S. Green, Memphis, Tennessee, for the appellant, Michael Kizer.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Background**

This case arises from the Petitioner's conviction of two counts of aggravated robbery and one count of attempted aggravated robbery. *State v. Michael Kizer*, No.

W2013-02559-CCA-R3-CD, 2014 WL 5512863, at *1 (Tenn. Crim. App., at Jackson, Oct. 3, 2014)), *perm. app. denied* (Tenn. Feb. 13, 2015). In our opinion on the Petitioner's appeal of his convictions and sentence, we summarized the facts, which we condense here, as follows:

F.H.[1], K.H., Frederick Green, and Marquette Sidney were walking on Monsarrat Street in Memphis during the early morning hours of June 27, 2010, when a white four-door car stopped by them. F.H., who was fourteen years old at the time of the robbery, said a man in the vehicle asked them if they knew a person named Markisha. As F.H. and K.H. began to walk towards the car, the Petitioner, who was riding in the front passenger seat, jumped out of the car. The witnesses said that the Petitioner had a distinctive tattoo of an "H" in the middle of his forehead. The Petitioner, armed with a black pistol, told K.H. to remove her clothing, saying he was going to rape them. F.H. ran to some nearby bushes where she hid and called the police.

The Petitioner hit Sidney in the head with his gun resulting in wounds for which he needed medical treatment. He also hit Mr. Green in the face. K.H. removed her clothing and recalled standing in the street in her underwear crying. The Petitioner went through Mr. Sidney's pockets while he was helpless on the ground and took some cash and a pack of cigarettes. From Mr. Green, he took shoes, a cell phone, and some cash. At some point, he dropped his gun and another man, Martrevious, who the witnesses knew from the neighborhood, got out of the car and picked up the gun.

The Petitioner left, and police arrived shortly thereafter. The record revealed that the Petitioner had been released on numerous felony convictions, including multiple convictions for aggravated assault, aggravated robbery, and theft of property. The trial court ruled that the Petitioner's theft convictions were admissible as they were highly probative of the Petitioner's credibility and outweighed any prejudice to the Petitioner. The trial court declined to admit the Petitioner's other prior convictions.

Martrevious Kizer, the Petitioner's nephew, testified that he knew K.H. and F.H. from school and the neighborhood. Martrevious asked the Petitioner for a ride to his grandmother's house, and the Petitioner and another unidentified man, who was driving, picked him up in a white, four-door car. The Petitioner and the unidentified person told Martrevious that they would drop him off after they rode around for a while. They drove around for about thirty minutes, until they spotted a group of people walking on Monsarrat Street. The Petitioner cocked his black handgun, and they pulled the car up next to the pedestrians. The driver told Martrevious to watch out for the Petitioner, who exited the car, walked up to the pedestrians, and struck one of the men with the gun. At some point during the robbery, the Petitioner dropped the gun and Martrevious got out of the car to give it back to the Petitioner. After the robbery, the Petitioner and the unidentified driver

---

[1] To protect the victim's privacy, we will refer to them by their initials only.

dropped Martrevious off at his grandmother's house.

The Petitioner explained these events saying that he asked a friend to drive him to the store at around midnight. As he left the store, Martrevious approached him and appeared to be crying, saying that two guys had "jumped" him. Martrevious got into the car, and, as they drove, he identified Mr. Green as one of the men who had jumped him. The Petitioner said he was unarmed as he exited the vehicle. He said that he hit Mr. Green so hard with his fist that he dislocated a bone in his hand. While he was fighting Mr. Green, Martrevious and the driver of the vehicle were fighting Mr. Sidney. The Petitioner denied telling anyone to remove their clothing. He said this was a "fight" and not a "robbery." He denied that he took anything from the victims.

The jury deliberated and found the Petitioner guilty as charged. The trial court later sentenced the Petitioner to thirty years on each of his two aggravated robbery convictions and ordered that those sentences run concurrently. The trial court also sentenced the Petitioner to fifteen years on his attempted aggravated robbery conviction and ordered that the sentence run consecutively to the Petitioner's aggravated robbery conviction, for a total effective sentence of forty-five years of incarceration.

The Petitioner appealed his convictions, contending that the trial court improperly severed his case from Martrevious's case and that it improperly allowed Martrevious to testify. This court affirmed the Petitioner's convictions. *Kizer*, 2014 WL 5512863, at *1.

On July 26, 2017, the Petitioner filed a petition for a writ of error *coram nobis*. In it, the Petitioner contended that the trial court had granted his request for a mental health examination prior to trial to determine if he was competent to stand trial. He stated that he had a history of mental health disorders throughout his life and was functionally illiterate. After the mental health examination, he was found competent to stand trial and had the mental capacity to be responsible for the conduct. During the sentencing hearing, the Petitioner's sister testified that the Petitioner was unable to abide by the laws of society, despite his constant mental health treatment. The Petitioner asserted that the doctors conducting his mental health examination did not have the benefit of this testimony. Further, he asserted that, had they been aware of the Petitioner's sister's testimony, "such evidence could have caused the evaluating agency to come to a different conclusion other than the [Petitioner] could not sustain a defense of mental responsibility."

The *coram nobis* court reviewed the petition and the State's motion to dismiss, and it sided with the State, granting its motion to dismiss. The court found:

> The petition for writ of error *coram nobis* filed on July 26, 2017 makes no mention of the untimeliness of its filing. The [P]etitioner was convicted on August 1, 2013 and sentenced on November 8, 2013. There is no reference in the petition to the one-year statute of limitations. There is no

3

reason given for the delay in the filing of the petition.  There is no mention in the petition as to why the [P]etitioner should be entitled to equitable tolling of the statute of limitations.

The *coram nobis* court held the Petitioner had not established any reason to require a tolling of the statute of limitations or that due process required such tolling.  The trial court stated, "There has not been any explanation or argument about why the [P]etitioner's trial attorney did not have this 'new evidence' prior to trial or at the time of trial."  It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it summarily dismissed his petition for a writ of error *coram nobis*.  He asserts that if trial counsel had interviewed his sister before trial, rather than after trial, he would have learned that the Petitioner had been dropped on his head when he was one day old, resulting in an injury that his sister believed affected him throughout his life.  The Petitioner or the trial court could have asked for the services of a neurologist to provide an MRI scan that would have identified any lasting neurological damage caused by the injury.  He noted that he had attempted to obtain an expert for the *coram nobis* proceedings to support his argument but was prevented from so doing.  He seemingly asserts that due process requires the tolling of the statute of limitations.

It is well-established that the writ of error *coram nobis* "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999).  The decision to grant or to deny a petition for the writ of error *coram nobis* on its merits rests within the sound discretion of the trial court. *Ricky Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)).  We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).  Tennessee Code Annotated section 40-26-105(b) provides, in pertinent part:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error *coram nobis* will lie for subsequently or newly discovered evidence relating to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.

A petition for a writ of error *coram nobis* "'may be dismissed without a hearing, and without the appointment of counsel for a hearing'" if the petition does not allege facts showing that the petitioner is entitled to relief. *Bernardo Lane v. State*, No. W2008-02504-CCA-R3-CO, 2009 WL 4789887, at *5 (Tenn. Crim. App., at Jackson, Dec. 11, 2009),

*perm. app. denied* (Tenn. June 17, 2010) (citations omitted). "As a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record . . . will not justify the granting of a petition for the writ of error *coram nobis* when the evidence, if introduced," might not have resulted in a different outcome. *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995) (citations omitted); *see also Vasques*, 221 S.W.3d at 525-28 (noting that proper standard of review is whether the proffered evidence "might have" resulted in a different outcome rather than whether it "would have" resulted in a different one).

The writ of error *coram nobis* is subject to a one-year statute of limitations which is measured from the date the judgment becomes final. *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (quoting *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999)); *see also* T.C.A. § 27-7-103. Compliance with the one-year statute of limitations is an "essential element of a *coram nobis* claim." *Nunley*, 552 S.W.3d at 828 (quoting *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010)). The statute of limitations is calculated from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely, post-trial motion. *Payne v. State*, 493 S.W.3d 478, 484 (Tenn. 2016); *Mixon*, 983 S.W.2d 661, 670 (Tenn. 1999). A petition for a writ of error *coram nobis* may be summarily dismissed if it fails to show on its face that it has been timely filed because the timely filing requirement in Code section 27-7-103 is an essential element of a *coram nobis* claim. *Nunley*, 552 S.W.3d at 828.

The one-year statute of limitations may, however, be tolled if a petition for a writ of error *coram nobis* seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period. *Id.* at 828-29. "In keeping with the extraordinary nature of the writ," a petitioner must set forth facts demonstrating that the claim arose after the statute of limitations would have started to run and that a strict application of the limitations requirement would deny him a reasonable opportunity to present his claim. *Id.* at 829. The *coram nobis* court possesses the discretion to summarily dismiss a petition if it fails to show on its face that it is timely or the averments merit due process tolling. *Id*. Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which is reviewed *de novo* with no presumption of correctness. *Id*. at 830. "The inquiry ends if his petition is not timely and if he has failed to demonstrate that he is entitled to relief from the statute of limitations." *Id*. at 831 (the petitioner's other claims pretermitted by his untimely petition and failure to establish due process tolling).

We conclude that the *coram nobis* court did not err when it summarily dismissed the Petitioner's petition for a writ of error *coram nobis*. As the *coram nobis* court noted, the Petitioner's sentencing hearing was held November 8, 2013. The Supreme Court ultimately denied his appeal on February 19, 2015. He filed this petition on July 26, 2017, almost four years after his convictions became final. Clearly, the Petitioner does not make a claim of actual innocence. He instead is asserting that he has a diminished capacity for

5

having committed his crimes based upon his mental health.  Due process does not require a tolling of the statute of limitations.  We conclude that the trial court did not abuse its discretion when it held that the Petitioner was not entitled to *coram nobis* relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude the *coram nobis* court properly denied the Petitioner's petition for writ of error *coram nobis*.  In accordance with the foregoing reasoning and authorities, we affirm the *coram nobis* court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE