IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 12, 2024

### BRIAN C. LAUTENSCHLAGER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Decatur County**
**No. 96-CR-412      J. Brent Bradberry, Judge**
_____

**No. W2024-00582-CCA-R3-ECN**
_____

Petitioner, Brian C. Lautenschlager, filed a pro se Petition for Writ of Error Coram Nobis ("the Petition"), seeking relief based on a "newly discovered" affidavit that was signed in 2007 and "sent" to him in 2023. The coram nobis court found that the Petition was not filed within the one-year statute of limitations and that Petitioner failed to establish that he was entitled to equitable tolling of the statute of limitations and summarily dismissed the Petition. We affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which J. ROSS DYER and MATTHEW J. WILSON, JJ., joined.

Brian C. Lautenschlager, Mountain City, Tennessee, pro se.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Neil Thompson, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural Background

Petitioner was convicted by a Decatur County jury of aggravated robbery and attempted first degree murder. The trial court sentenced Petitioner as a Career Offender to thirty years for aggravated robbery and sixty years for attempted first degree murder and aligned the sentences consecutively. *State v. Lautenschlager*, No. 02C01-9702-CC-00051, 1998 WL 28048, at *1 (Tenn. Crim. App. Jan. 26, 1998), *perm. app. denied* (Tenn. Sept. 14, 1998). The following facts are quoted from this court's opinion in the direct appeal:

At approximately 10:00 p.m. on October 19, 1995, [Petitioner], along with Diane Brown and Charlie Davis, entered the Sportsman Club in Decatur County. The victim, Dennis White, was the operator of the establishment and was the only other person present at that time. While Brown and Davis were playing pool, [Petitioner] stated he was going outside to get a pool stick.

[Petitioner] re-entered the establishment armed with a sawed-off shotgun. [Petitioner] pointed the shotgun at White's head from only a few feet away and demanded money. White predictably complied by placing approximately $500 from the cash register onto the bar and pleaded with the [Petitioner], "There's no need to kill me . . . I've got two (2) kids at home . . . I don't even know you." [Petitioner] replied, "Yeah, you know me. My name is Chris." [Petitioner] then smiled at White and fired the shotgun at him. White dodged, causing the primary shotgun pattern to miss him; however, part of the blast left a flesh wound on his left shoulder and "blowed [his hat] over the back of [his] head." White then secured his own pistol causing [Petitioner] to flee the building. While outside, White wounded Brown and observed [Petitioner] retrieve a pistol from an automobile. White fled. [Petitioner] then fired two (2) or three (3) shots, and White was hit in the right leg while he was running away. White eventually made it to the safety of a neighbor's home.

[Petitioner], Brown, and Davis subsequently fled to Florida and then to California where [Petitioner]'s grandmother resided. All three (3) were captured in California.

White and Brown testified for the [S]tate and positively identified [Petitioner] as the person who fired both the shotgun and the pistol at White. Davis had fled the jurisdiction and was unavailable at the time of trial. [Petitioner] testified that Davis was the person who confronted White and fired the weapons. The jury obviously rejected the testimony of [Petitioner].

*Id*. This court found the evidence sufficient to support the jury's verdict and affirmed the judgments of the trial court. *Id*. at *4.

Petitioner sought post-conviction relief nine years after the supreme court denied his application for permission to appeal in his direct appeal. This court affirmed the post-conviction court's summary dismissal of his petition as time-barred. *Lautenschlager v. State*, No. W2008-00162-CCA-R3-PC, 2008 WL 4936716, at *1 (Tenn. Crim. App. Nov. 19, 2008), *perm. app. denied* (Tenn. Apr. 27, 2009).

- 2 -

## Current Petition

In the Petition filed on March 1, 2024, Petitioner asserted that he was entitled to relief based on information contained in "a new sworn affidavit by a previously unavailable witness." Attached to the Petition was the affidavit of Daryl G. Allen, which was sworn and subscribed before a Decatur County Notary Public on November 2, 2007. The Petition claimed that Mr. Allen's affidavit was "sent" to Petitioner by Andrew Wallace in late July 2023.[1] According to the affidavit, Mr. Allen, who was a Criminal Investigator for the Decatur County Sheriff's Department when he signed the affidavit, had been employed as a deputy with the Henderson County Sherrif's Department ("HCSD") while Petitioner was incarcerated in the Henderson County Jail. Mr. Allen averred that he overheard HCSD Officers Mike Vance and Jeff Woods "make the threat to [Petitioner] that if he didn't cooperate with them that they would kill him and leave his body in Natchez Trace State Park where no one would find him." Although Mr. Allen initially affirmed that he "honestly" did not know why the two deputies threatened to kill Petitioner, he then stated that "they had attempted to get [Petitioner] to sell some property that had been removed from the evidence room and he refused[,]" and "it appeared that they were attempting to set [Petitioner] up." Mr. Allen also claimed that his life was threatened by the two officers.

Petitioner also attached a statement and "Signed Sworn Affidavit" purportedly signed by Dennis E. White on January 15, 2003. The stated purpose of the affidavit was to support a request to Governor Sunquist to grant a full pardon for Petitioner. The Petition states that Mr. White "made two formal statements after trial." In both statements Mr. White "explained that he had been pressured by police to implicate [P]etitioner instead of the person who actually robbed him." The Petition does not state that Mr. White's affidavit is newly discovered evidence.

The affidavit states that Mr. White was the owner of The Sportsman Club and the victim of the aggravated robbery and attempted first degree murder for which Petitioner was convicted. Mr. White affirmed that he "inadvertently identified" Petitioner as the "perpetrator committing robbery and attempted murder on myself and my establishment" and that Mr. White "felt forced into identifying [Petitioner] as the perpetrator due to the forcefulness of the law enforcement at that time." Mr. White claimed that, in his original statement to police, he identified "the perpetrator as being six foot tall and weighing one hundred and seventy pounds" and "being the tallest man on the video tape." He said that he had since "learned" that Mr. Davis was six-foot-four, and that Petitioner was five-foot-eight inches tall.

---

[1] Petitioner does not provide any identifying information concerning Andrew Wallace.

**Coram Nobis Court's Order Summarily Dismissing Petition**

The coram nobis court found that the judgments of conviction became final on August 30, 1996, and that the Petition, which was "filed on March 1, 2024, was filed well outside the one (1) year statute of limitations." The court found that "Petitioner failed to allege that [the P]etition was timely filed, failed to reference the statute of limitations, and failed to request an equitable tolling of the statute of limitations."

Concerning Mr. Allen's affidavit, the coram nobis court found that:

One affidavit purports to be from Daryl Allen, a former investigator in Decatur County. This document was notarized November 2, 2007. The contents of this affidavit relate to a conspiracy involving officers in Henderson County and their intent to harm [P]etitioner in November 1995. Petitioner states no basis for failing to call any of these officers or the affiant to testify at his trial even though [P]etitioner was present when the alleged events transpired. The [c]ourt finds that this evidence is not newly discovered. [P]etitioner failed to state with particularity how the contents of this affidavit, if taken as true, would entitle [P]etitioner to relief.

Regarding Mr. White's affidavit, the coram nobis court stated:

One affidavit purports to be from Dennis E. White, the victim in this case. No Notary stamp is visible. The date this document was signed by a "Notary Public" purports to be January 15, 2003. This document has a line drawn through the signature of the affiant, Dennis E. White, and is also purportedly signed by a Dianne Grissom for unknown reasons. This document, on two separate locations, has lines drawn through "November 2002" with "Jan 03" written above it. The [c]ourt finds that a properly sworn and current affidavit of the victim to a crime which recants his testimony at trial could be grounds to justify a hearing. However, the [c]ourt cannot find that a purported affidavit from 2002 or 2003, over twenty-years ago, stands as timely to this claim. The [c]ourt finds that this affidavit does not justify equitable tolling of the statute of limitations.

The coram nobis court concluded that an evidentiary hearing was not necessary and summarily dismissed the Petition.

- 4 -

**Analysis**

On appeal, Petitioner claims that "his new evidence" is sufficient to warrant reversal of his convictions. The State claims that the coram nobis court properly dismissed the Petition without a hearing because the Petition was untimely, the affidavits were not newly discovered evidence, and Mr. Allen's affidavit "expresses no claims regarding [P]etitioner's innocence." We agree with the State.

Tennessee Code Annotated section 40-26-105(b) provides that coram nobis relief is available in criminal cases as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

A writ of error coram nobis in criminal cases is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The writ comes "with stringent statutory requirements." *Clardy v. State*, 691 S.W.3d 390, 400 (Tenn. 2024). "In keeping with the extraordinary nature of the writ, the petition must be pled with specificity." *Id*. A coram nobis court may grant the writ only when the coram nobis petition is in writing and describes "with particularity the nature and substance of the newly discovered evidence" and "demonstrates that it qualifies as newly discovered evidence." *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (citing *Payne v. State*, 493 S.W. 3d 478, 485 (Tenn. 2016)). "A writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105(a).

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103. "Timeliness under the statute of limitations . . . is not an affirmative defense; rather, it is one of the essential elements of a coram nobis claim." *Clardy*, 691 S.W.3d at 401. In certain circumstances, due process considerations may require the tolling of the statute of limitations. "[T]he coram nobis statute of limitations may be tolled only if the petitioner produces newly discovered evidence that would, if true,

establish clearly and convincingly that the petitioner is actually innocent of the underlying crime of which he was convicted." *Id.* at 407.

"If a petition for a writ of error coram nobis fails to *show on its face* either that it has been timely filed in accordance with Tennessee Code section 27-7-103 or specific facts showing why the petitioner is entitled to equitable tolling of the statute of limitations, the [coram nobis] court is within its discretion to summarily dismiss it." *Nunley*, 552 S.W.3d at 829. (Emphasis added). The decision to grant or deny coram nobis relief rests within the sound discretion of the coram nobis court. *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007).

In this case, the Petition was filed more than two decades after the judgments of conviction became final. The Petition was, therefore, subject to "summary dismissal," "without discovery or an evidentiary hearing," unless the facts supporting the tolling of the statute of limitations appeared on the face of the Petition. *Nunley*, 552 S.W.3d at 806.

The "essence" of Mr. Allen's affidavit attached to the Petition is that Petitioner was threatened by two deputies while he was in jail in Henderson County. In the affidavit, Mr. Allen claims that he overheard HCSD Officers Vance and Woods "make the threat to [Petitioner] that if he didn't cooperate with them that they would kill him and leave his body in Natchez Trace State Park where no one would find him." The Petition states that Andrew Wallace "sent" Mr. Allen's affidavit to Petitioner in "late July 2023." The Petition does not explain who Mr. Wallace is or why Mr. Wallace sent the affidavit to Petitioner almost sixteen years after it was signed. In any event, Petitioner was the person threatened and would have known who threatened him. As noted by the coram nobis court, Petitioner could have called Officers Vance and Woods and possibly Mr. Allen to testify at trial. Petitioner has failed to show that he was "not without fault" in failing to present Mr. Allen's affidavit at the proper time. *See* Tenn. Code Ann. §40-26-105(b). Moreover, even if Mr. Allen's affidavit was newly discovered evidence, and even if the statements in the affidavit were true, the affidavit does not clearly and convincingly establish that Petitioner "is actually innocent of the underlying crime of which he was convicted." *Clardy*, 691 S.W.3d at 407.

The Petition does not state when Petitioner first learned about Mr. White's recantation. Based upon the language in the Petition, however, it appears Petitioner knew Mr. White made two statements after trial explaining that he had been pressured by police to implicate Petitioner instead of Mr. Davis. Regarding Mr. White's purported affidavit from 2003, the stated purpose of the affidavit was to support a request to Governor Sunquist to grant a full pardon on behalf of Petitioner. Neither Mr. White's affidavit nor his recantation would qualify as newly discovered evidence.

**Conclusion**

The Petition was not timely filed, and it failed to show on its face "specific facts showing why the petitioner [was] entitled to equitable tolling of the statute of limitations[.]" *Nunley* 552 S.W.3d at 829. Therefore, the coram nobis court did not abuse its discretion by summarily dismissing the Petition as time-barred. The judgment of the coram nobis court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE