IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2025 at Knoxville

## SHAWN SIMMONS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lincoln County**
**No. 08CR84        Forest A. Durard, Jr., Judge**

_____

**No. M2024-01590-CCA-R3-ECN**

_____

In 2008, a Lincoln County jury convicted the Petitioner, Shawn Simmons, of first degree murder, and the trial court imposed a sentence of life imprisonment. Sixteen years later, the Petitioner filed a petition for writ of error coram nobis, asserting that a trial witness had since revealed previously undisclosed information related to the offense. The coram nobis court dismissed the petition without a hearing, concluding that the petition was untimely and that due process principles did not toll the one-year statute of limitations. The Petitioner now appeals, contending that the summary dismissal was erroneous. Upon review, we respectfully affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Shawn Simmons, Mountain City, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber Sandoval, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    THE SHOOTING AND CRIMINAL CHARGES

On February 3, 2008, the Petitioner shot and killed the victim, Keith Buchanan, outside the Petitioner's residence in Lincoln County.  *See State v. Simmons*, No. M2009-01362-CCA-R3-CD, 2010 WL 3719167, at *1 (Tenn. Crim. App. Sept. 23, 2010), *perm. app. denied* (Tenn. Feb. 17, 2011).  The events leading up to the shooting stemmed from tensions between the Petitioner and the victim's family.  The Petitioner had been in a relationship with Angela Hill, the victim's sister, and he had ongoing disputes with both the victim and another sibling, Rodney Howard.  *See id.*

On the evening of the shooting, the victim, Mr. Howard, and three others traveled together to the Petitioner's home after reportedly hearing about a domestic dispute involving Ms. Hill and the Petitioner.  The Petitioner stated that the victim got out of the car and approached him aggressively.  The Petitioner cautioned the victim not to "run up" on him and subsequently fired a single shot that hit the victim in the chest.  Ms. Hill shouted, "I can't believe you shot my brother, Shawn."  Mr. Howard and the others then transported the victim to the hospital, where the victim died from the gunshot wound.  *See id.*

A Lincoln County grand jury indicted the Petitioner for first degree murder.  Following a trial, a jury found the Petitioner guilty as charged.  The trial court sentenced the Petitioner to life imprisonment, and this court affirmed the conviction and sentence on appeal.  *See id.*

### B.    PETITION FOR WRIT OF ERROR CORAM NOBIS

After unsuccessfully pursuing a variety of post-conviction remedies in state and federal court,[1] the Petitioner filed a petition for a writ of error coram nobis on July 15,

---

[1]    *See Simmons v. State*, No. S1100100 (Lincoln Cnty. Cir. Ct. May 27, 2000) (dismissing petition for a writ of error coram nobis); *Simmons v. Lee*, No. M2018-00150-CCA-R3-PC, 2018 WL 4771122 (Tenn. Crim. App. Oct. 2, 2018) (dismissing appeal from denial of motion to reopen post-conviction petition), *no perm. app. filed*; *Simmons v. Lindamood*, No. 4:14-CV-27-TWP-SKL, 2017 WL

2024.  In this filing, the Petitioner asserted that he resumed his friendship with Ms. Hill "in 2023."  He asserted that she revealed "events he had not been privy to" and was interviewed by the Petitioner's investigator.  According to the petition, Ms. Hill stated that:

- the men, including the victim and Mr. Howard, openly discussed their intent to harm the Petitioner and brought firearms with them;

- after the shooting, they returned home to hide their guns before taking the victim to the hospital;

- Mr. Howard was on parole at the time, despite testifying otherwise at trial; and

- the men delayed seeking medical attention for the victim out of fear of criminal consequences.

The coram nobis court summarily denied the petition on September 16, 2024.  More specifically, the court found that the Petitioner failed to demonstrate he was aware of the alleged conspiracy or the firearms at the time of the shooting, rendering the evidence immaterial to his state of mind and could not support a claim of self-defense.

The court also determined that the impeachment evidence related to the witness's parole status was not newly discovered and could not have led to a different result at trial.  Further, the court rejected the claim that a delay in seeking medical care constituted an intervening cause sufficient to absolve the Petitioner of criminal responsibility.  The court found that any delay was not a sufficient intervening cause to break the chain of causation from the shooting to the victim's death.

Finally, although the petition was filed well beyond the one-year statute of limitations, the coram nobis court concluded that due process principles did not warrant tolling.  The court found that, even if the asserted grounds had been raised in a timely manner, they would not have had any "impact on the outcome of the trial."

4228758, at *1 (E.D. Tenn. Sept. 22, 2017) (dismissing petition for a writ of habeas corpus); *Simmons v. State*, No. M2012-00987-CCA-R3-PC, 2013 WL 1225857 (Tenn. Crim. App. Mar. 27, 2013) (affirming denial of post-conviction relief), *perm. app. denied* (Tenn. Sept. 19, 2013).

The Petitioner filed a timely notice of appeal by delivering the notice to the appropriate individual at his correctional facility on October 14, 2024. *See* Tenn. R. App. P. 4(a), 20(g).

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the coram nobis court properly dismissed the Petitioner's request for relief. "The decision to grant or deny a petition for writ of error coram nobis on its merits rests within the trial court's sound discretion." *Payne v. State*, 493 S.W.3d 478, 484 (Tenn. 2016). "Whether a claim is barred by an applicable statute of limitations is a question of law, which we review de novo." *Nunley v. State*, 552 S.W.3d 800, 830 (Tenn. 2018). "Whether due process requires tolling the statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." *Clardy v. State*, 691 S.W.3d 390, 401 n.4 (Tenn. 2024).

## ANALYSIS

In this appeal, the Petitioner identifies a single broad issue: whether the coram nobis court erred in denying relief. In the argument section of his brief, however, he asserts that the coram nobis court misapplied the correct legal standard and "reached a conclusion that was illegal and unreasonable." He argues that Ms. Hill's statements are new evidence that, if considered by the jury, may have led to a different result at trial.

In response, the State argues that the petition is barred by the one-year statute of limitations governing coram nobis actions. It also asserts that due process principles do not toll the running of the statute of limitations. *Id.* Finally, the State contends that the coram nobis court properly denied the petition after finding that the evidence, even if newly discovered, could not have led to a different result at trial. We agree with the State.

The writ of error coram nobis, which originated in common law five centuries ago, "allowed a trial court to reopen and correct its judgment upon discovery of a substantial factual error not appearing in the record which, if known at the time of judgment, would have prevented the judgment from being pronounced." *State v. Mixon*, 983 S.W.2d 661, 666-67 (Tenn. 1999). As first codified in Tennessee in 1858, the writ only applied to civil cases. *See id.* at 667-68. In 1955, a statutory version of the writ of error coram nobis was

4

enacted, making the writ also applicable to criminal proceedings. *See Nunley*, 552 S.W.3d at 811.

The writ of error coram nobis is presently codified in Tennessee Code Annotated section 40-26-105 (2018), and at the time this petition was filed, the statute provided as follows:[2]

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b) (2018) (subsequently amended).

The writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." *Mixon*, 983 S.W.2d at 672. "The purpose of a writ of error coram nobis is to bring to the court's attention a previously unknown fact that, had it been known, may have resulted in a different judgment." *Johnson v. State*, No. W2020-00753-CCA-R3-ECN, 2021 WL 4100444, at *7 (Tenn. Crim. App. Sept. 9, 2021) (citing *State v. Vasques*, 221 S.W.3d 514, 526-27 (Tenn. 2007)), *perm. app. denied* (Tenn. Jan. 13, 2022). The relief "sought via a writ of error coram nobis is the setting aside of the judgment of conviction and the granting of a new trial." *Payne*, 493 S.W.3d at 485 (citation and internal quotation marks omitted).

## A.    CORAM NOBIS STATUTE OF LIMITATIONS

A petition for writ of error coram nobis is subject to a one-year statute of limitations. *See* Tenn. Code Ann. § 27-7-103 (2017). The one-year period begins to run when the judgment becomes final in the trial court—either thirty days after its entry if no post-trial motion is filed, or upon entry of an order resolving a timely post-trial motion. *Payne*, 493

---

[2]    The General Assembly has since amended the coram nobis statute to permit the use of the writ, in limited circumstances, to challenge convictions arising from pleas of guilt, best interest, or no contest. *See* 2025 Tenn. Pub. Acts, ch. 282 (eff. April 24, 2025). The amendments do not otherwise affect the issues addressed herein.

S.W.3d at 484.[3]  This limitations period is not treated as an affirmative defense; instead, the petition must demonstrate on its face that it was timely filed.  *Nunley*, 552 S.W.3d at 828.

In limited circumstances, principles of due process may toll the running of the statute.  *See Clardy*, 691 S.W.3d at 404.  However, a petitioner seeking such tolling must satisfy two requirements.  First, the petitioner must show that he or she filed the "petition no more than one year" after discovering the newly available evidence.  *Id.* at 408.  Second, the petitioner must allege that he or she "seeks relief based upon new evidence of *actual innocence* discovered after expiration of the limitations period."  *Nunley*, 552 S.W.3d at 828-29 (emphasis added).

Importantly, a petitioner may not simply assert that the petition is filed in a timely manner.  Instead, when a petition is filed after the one-year statute of limitations has expired, it "must set forth *with particularity* facts" showing that the petitioner is entitled to a tolling of the statute of limitations.  *Id.* at 829 (emphasis added).  As this standard has been applied in other areas of our law, the obligation to plead facts with particularity requires that the factual allegations be "sufficiently definite, specific, detailed and nonconjectural."  *See, e.g.*, *State v. Winbush*, No. E2018-02136-CCA-R3-CD, 2020 WL 1466307, at *13 (Tenn. Crim. App. Mar. 24, 2020), *perm. app. denied* (Tenn. Aug. 6, 2020); *see also* Tenn. R. Crim. P. 47.

A court may summarily dismiss a coram nobis petition without a hearing "if it determine[s] that the evidence cited in the petition, if deemed credible, would not provide a basis for tolling the statute of limitations."  *Clardy*, 691 S.W.3d at 409.  In fact, our supreme court has been clear that coram nobis petitioners "should assume they will *get no hearing* and that the fate of their case turns on whether the petition demonstrates on its face that they are entitled to the relief sought, including tolling of the statute of limitations."  *Id.* at 411 n.18 (emphasis added).

---

[3]    Our supreme court has recognized that because "a petition for writ of error coram nobis is untimely unless filed within one year of the time a judgment becomes final in the trial court, it is clear that a timely petition for writ of error coram nobis will almost always be filed while an appeal is pending."  *Mixon*, 983 S.W.2d at 671 (addressing procedures for considering a petition for a writ of error coram nobis while a direct appeal is also pending).

6

## B. FILING AFTER THE STATUTE OF LIMITATIONS

In this case, the petition for the writ is clearly untimely. The coram nobis court found that the Petitioner's original litigation concluded in 2011 and that the one-year statute of limitations therefore expired in 2012. Because the petition was not filed until July 15, 2024—more than a decade later—it was filed well outside the limitations period. *See* Tenn. Code Ann. § 27-7-103. As such, unless the Petitioner can demonstrate that he meets the requirements for tolling the statute of limitations, this late filing is fatal to his claim.

## C. TOLLING OF THE STATUTE OF LIMITATIONS

As we observed above, to toll the coram nobis statute of limitations, the petition must allege facts with particularity showing that (1) the petition was filed within a year of his discovering the new evidence; and (2) the newly discovered evidence shows that he is actually innocent of his crime. Upon our review of the record and applicable law, we agree with the coram nobis court that the Petitioner failed to meet either of the two requirements necessary to justify tolling. We consider these requirements in turn.

### 1. Timing of the Newly Discovered Evidence

The coram nobis petition was filed on July 15, 2024. Accordingly, to be entitled to a tolling of the statute of limitations, the Petitioner must have alleged facts with particularity showing that he discovered the claimed new evidence within the previous year, or on or after July 15, 2023. *See Clardy*, 691 S.W.3d at 408-09; *Nunley*, 552 S.W.3d at 829.

The petition fails to meet that burden. Although the Petitioner asserts, in conclusory fashion, that "it has been less than a year" since he learned of Ms. Hill's disclosures, he pleads no specific facts to support this claim. The petition does not identify the date—or even an approximate range of dates—when Ms. Hill allegedly made these disclosures. Nor does it describe the context or circumstances in which she made the disclosures. In short, the petition offers only a general conclusion of timeliness, without asserting any facts from which the court could reasonably determine when the discovery occurred.

It is true that the petition states that the Petitioner "resumed a friendship" with Ms. Hill at some point "in 2023" and that "over the course of time," she came to trust him enough to disclose information about the crime. However, these generalized assertions do

not satisfy the requirement to plead facts with particularity. The petition lacks sufficiently definite, specific, detailed, and nonconjectural allegations necessary to support a tolling claim. Critically, the petition does not even rule out the possibility that Ms. Hill's disclosures occurred before July 15, 2023. *See Summers v. State*, No. M2024-01451-CCA-R3-ECN, 2025 WL 1587029, at *4 (Tenn. Crim. App. June 5, 2025) (affirming dismissal of a 2024 petition where evidence allegedly discovered in "2023" failed to establish timely discovery within one year of the May 29, 2024, filing), *perm. app. open*. Accordingly, we conclude that the principles of due process do not toll the running of the coram nobis statute of limitations in this case.

### 2. Evidence of Actual Innocence

The petition also fails to meet the second requirement for tolling: that the newly discovered evidence, if true, would clearly and convincingly establish that the Petitioner is actually innocent of the offense for which he was convicted. *Clardy*, 691 S.W.3d at 409. As our supreme court has explained, "actual innocence" in this context "means nothing other than that the person did not commit the crime." *Id.* at 406 (quotation omitted). At the pleading stage, the reviewing court must assume the truth of the newly alleged evidence and determine whether, if credited, it would clearly and convincingly show that the petitioner did not commit the offense. *Id.* at 408.

The Petitioner alleges that Angela Hill recently disclosed four new facts not presented at trial: (1) that the men who accompanied the victim on the night of the shooting were armed; (2) that they expressed an intent to harm the Petitioner; (3) that they delayed seeking medical care in order to dispose of their weapons; and (4) that Mr. Howard was on parole at the time of trial. He asserts that these statements support a claim of self-defense, cast doubt on the credibility of a key State witness, and ultimately undermine the jury's verdict.

However, whether considered individually or together, none of these disclosures establish that the Petitioner is actually innocent of the victim's murder. Regarding the first two disclosures, the coram nobis court correctly noted that the Petitioner has never claimed—either at trial or in his petition—that he was aware the men were armed when he fired the fatal shot. If the Petitioner did not know they had weapons, their presence could not have influenced his decision to use deadly force. Thus, even assuming the truth of Ms. Hill's first two statements, they do not clearly or convincingly show that the Petitioner did not commit the offense.

8

The Petitioner also relies on Ms. Hill's statement that the men delayed transporting the victim to the hospital in order to conceal their weapons. However, the record reflects—and the petition does not dispute—that the Petitioner shot the victim in the chest at close range. The petition contains no allegation that the delay, rather than the gunshot, was the cause of death. In fact, the petition acknowledges that additional medical evidence would be necessary to determine whether any delay in treatment contributed to the victim's death or affected the outcome in a meaningful way. Absent such proof, this disclosure does not meet the standard for demonstrating actual innocence.

Finally, Ms. Hill's assertion that Mr. Howard was on parole at the time of trial may have some impeachment value, but it does not support a claim of actual innocence. Our supreme court has made clear that newly discovered evidence that serves only to impeach a witness does not warrant coram nobis relief. *See State v. Hall*, 461 S.W.3d 469, 495 (Tenn. 2015). Likewise, this court has rejected tolling under *Clardy* when the newly presented evidence merely contradicted or undermined trial testimony. *See, e.g., Garner v. State*, No. M2023-01337-CCA-R3-ECN, 2024 WL 3634273, at *5 (Tenn. Crim. App. Aug. 2, 2024), *perm. app. denied* (Tenn. Dec. 11, 2024). Ms. Hill's impeachment statement, standing alone, falls short of establishing that the Petitioner did not commit the offense.

The Petitioner has not presented any newly discovered evidence that, even if taken as true, clearly and convincingly establishes that he did not commit the offense. *See Clardy*, 691 S.W.3d at 407. Accordingly, we affirm the coram nobis court's determination that due process principles do not toll the statute of limitations and that the petition was properly dismissed as untimely.

## CONCLUSION

In summary, we hold that the petition for a writ of coram nobis is untimely and that principles of due process do not toll the running of the statute of limitations. Accordingly, we respectfully affirm the judgment of the coram nobis court summarily dismissing the petition.

s/ **Tom Greenholtz**
TOM GREENHOLTZ, JUDGE

9